### In re Pamela GODT.

### No. 13–00–388–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 24, 2000.

Rehearing Overruled Nov. 2, 2000.

William J. Tinning, Portland, Timothy Patton, Timothy Patton, P.C., San Antonio, for Relator.

Douglas E. Chaves, Chaves, Gonzales & Hoblit, Corpus Christi, Audrey Mullert Vicknair, Chaves, Gonzales & Hoblit, Corpus Christi, for Respondent.

Before Justices DORSEY, HINOJOSA, and YAÑEZ.

## OPINION

Opinion by Justice YAÑEZ.

In this original proceeding, relator, Pamela Godt,[1] seeks mandamus relief from an order compelling arbitration under the Texas General Arbitration Act (the TAA)[2] of her legal malpractice action against real party-in-interest, attorney Thomas J. Henry (Henry). Pursuant to this Court's request, Henry filed a response. *See* TEX. R.APP. P. 52.8(b)(1). Without hearing oral argument, we conditionally grant the writ. *See* TEX.R.APP. P. 52.8(c).

On October 23, 1997, Godt telephoned Henry's Corpus Christi office to discuss retaining him to represent her in a medical malpractice case arising out of severe medical problems following hip surgery. Henry told Godt that although he was unable to see her, he would send a paralegal to her home in Rockport. Godt was unable to travel to Henry's office because she was suffering from severe pain associated with the surgery, and was being treated with pain medication. A paralegal from Henry's office, Patricia Hoyt, went to Godt's home with a Power of Attorney and Contingent Fee Contract (the agreement) for Godt's signature. Hoyt was not instructed to explain any of the contractual provisions to Godt, and did not do so. Hoyt testified by deposition that she visited with Godt for about forty-five minutes; Godt appeared to be in extreme pain and did not ask any questions. Except for Godt's husband and children, no one else was present. Hoyt stated she briefly discussed Godt's medical history with her and may have briefly discussed attorney's fees; there was no discussion, however, of any provisions contained in the agreement. Godt signed the agreement.

According to Godt, she spoke with an attorney in Henry's office in February or March 1999, and was told that everything was fine. Godt alleges Henry failed to investigate or pursue her medical malpractice claim and failed to return her phone calls inquiring about her case. Shortly before limitations expired, Henry attempted to refer the case to two other attorneys. Godt contends that by that time, there was insufficient time to adequately investigate or prepare the case, and both attorneys rejected the case. With only a couple of months left before limitations expired, Henry withdrew from the representation. When Godt complained she was unable to

---

1. Pamela Godt seeks relief individually and on behalf of her minor children, Josh Vineyard and Nicholas Cluff.

2. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001, *et seq.* (Vernon Supp.2000). The trial court's order compelling arbitration does not specifically refer to either the Texas arbitration statute or the Federal Arbitration Act (FAA). *See*

9 U.S.C. § 1 *et seq.* In his motion to compel arbitration, Henry argued that he was entitled to arbitration under both the TAA and the FAA. The trial court's findings of fact and conclusions of law, however, refer only to the TAA, and in this proceeding, Henry argues only that arbitration is proper under the Texas statute.

obtain another lawyer under the circumstances, Henry prepared a *pro se* petition.[3]

Godt filed suit against Henry, alleging his mishandling of her medical malpractice claim constituted negligence, gross negligence, fraud, misrepresentation, breach of fiduciary duty, and violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA).[4] Henry answered, and filed a motion to compel arbitration based on a mandatory arbitration clause contained in the agreement. Following a hearing on April 18, 2000, the trial court granted, on May 4, 2000, Henry's motion to compel arbitration and stayed the lawsuit pending resolution by binding arbitration.

Godt requested findings of fact and conclusions of law from the trial court. Henry submitted proposed findings of fact and conclusions of law. Godt objected to Henry's proposed findings and conclusions, but the trial court signed the findings and conclusions, without modification, on June 7, 2000.

The trial court's findings of fact included the following: (1) the arbitration agreement conforms with the TAA and "applicable legal authority;" (2) there was no evidence the arbitration agreement was procured by fraud, duress, or in an unconscionable manner; (3) Godt's claims arise out of her attorney/client relationship with Henry; and (4) there is no evidence that section 171.002(a)(3) of the civil practice and remedies code[5] is applicable to the agreement. The trial court also made the following conclusions of law: (1) the arbitration agreement is valid and enforceable under the TAA; (2) Godt's claims are within the scope of the agreement; (3) no applicable defense (such as fraud, duress, unconscionability, or waiver) exists to defeat the enforceability of the agreement; and (4) section 171.002(a)(3) of the civil practice and remedies code is inapplicable to the agreement.

Godt contends the agreement is unenforceable because her legal malpractice claim is "a claim for personal injury," and falls, therefore, within one of several types of claims excepted from the scope of the TAA by section 171.002. She argues that because she did not sign the agreement to arbitrate "on the advice of counsel," and because the agreement was neither signed by Henry nor counsel for either party, it fails to satisfy the "exception to the exception" criteria outlined in section 171.002(c). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.002(c) (Vernon Supp.2000). Whether the agreement is governed by the TAA depends, therefore, on whether a legal malpractice claim is "a claim for personal injury" within the meaning of section 171.002(c). Godt also contends the agreement is unenforceable on public policy grounds. She argues that because of attorneys' special role in the legal system, attorney-client contracts are subject to heightened scrutiny and that the public interest in protecting clients from attorneys' overreaching and unfair treatment is ill-served by allowing mandatory arbitration provisions in attorney-client contracts.

Henry contends this Court is without jurisdiction to review an order compelling arbitration because under the TAA, no review (including mandamus) is available

---

**3.** The record before us does not reflect the status of this petition.

**4.** TEX. BUS. & COM.CODE ANN. § 17.41 *et seq.* (Vernon 1987 and Supp.2000).

**5.** Section 171.002(a)(3) of the civil practice and remedies code provides, in pertinent part:

§ 171.002. Scope of Chapter
(a) This chapter [TAA] does not apply to:
. . . .
(3) a claim for personal injury, except as provided by Subsection (c);
. . . .
(c) A claim described by Subsection (a)(3) is subject to this chapter if:
(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and
(2) the agreement is signed by each party and each party's attorney.
TEX. CIV. PRAC. & REM.CODE ANN. § 171.002(a)(3), (c) (Vernon Supp.2000).

from an interlocutory order compelling arbitration. He argues Godt has an adequate remedy by appeal because an order compelling arbitration may be appealed upon completion of arbitration and entry of judgment by the trial court. In addition, Henry argues he is entitled to arbitration under the TAA because: 1) an arbitration agreement exists; 2) the claims are within the scope of the agreement; 3) Texas policy favors arbitration; 4) Godt failed to present evidence of unconscionability, fraud, or duress in the formation of the agreement; and 5) a claim for legal malpractice is not a claim for personal injury, which would operate to exclude Godt's claim from the TAA's applicability.

We must first determine whether mandamus is the appropriate relief for Godt. In making this determination, we note that Henry's jurisdictional challenge addresses only review of an order compelling arbitration *under the TAA*. Moreover, the trial court's findings of fact and conclusions of law refer only to the TAA; no findings of fact or conclusions of law were requested concerning applicability of the Federal Arbitration Act (FAA), and the trial court made no such findings or conclusions.

The arbitration agreement itself is internally inconsistent as to whether state or federal arbitration law governs disputes between the parties. Provision 10 of the agreement provides that the "Agreement shall be construed under and in accordance with the laws of the State of Texas, ... and regarding anything covered by this Agreement shall be governed by the laws of the State of Texas." The agreement also contains a statement located above the signature line, in all capital letters, that "THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION STATUTE." However, Provision 11 of the agreement, specifically entitled, "Arbitration," states that all disputes "shall be resolved by binding arbitration *pursuant to the Federal Arbitration Act* in accordance with the Commercial Arbitration Rules then in ef-

fect with the American Arbitration Association.... This arbitration provision shall be enforceable ... pursuant to the substantive federal law established by the Federal Arbitration Act." (emphasis added).

■ In reviewing an identical provision in an identical contract (same attorney, same contract, same complaint, and most distressingly, a virtually identical fact pattern with a different client), the San Antonio Court of Appeals, in *Henry v. Gonzalez*, 18 S.W.3d 684 (Tex.App.—San Antonio 2000, pet. filed), concluded that the reference to the FAA was a "drafting error" and that the dispute in that case was governed by the TAA, not the FAA. *See id.* at 688. Although *Gonzalez* was before the San Antonio Court in a different procedural posture than the instant case (in *Gonzalez*, appellants Henry and Hearn filed an interlocutory appeal of an order *denying* their motion to compel arbitration), and we decline to embrace the conclusions reached by the San Antonio Court, we nonetheless agree with the *Gonzalez* court's conclusion that the FAA is inapplicable because the contract does not relate to interstate commerce. *Id.*

■ We disagree, however, with the *Gonzalez* court's conclusion that notwithstanding the conflicting provisions, the TAA governs a contract such as the one before us in this case. *Id.* In construing a contract, a court's primary concern is to ascertain the true intention of the parties as expressed in the instrument. *Hofland v. Fireman's Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex.App.—Corpus Christi 1995, no writ) (citations omitted). In ascertaining the true intention of the parties, the courts will examine and consider the entire writing, seeking as best they can, to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* In interpreting a contract, the ultimate restraint is that a court cannot, through the construction process, make a new contract for the parties, one they did not make. *Borders v. KRLB*,

*Inc.*, 727 S.W.2d 357, 359 (Tex.App.—Amarillo 1987, writ ref'd n.r.e). We conclude that in the instant case, the conflicting provisions of the agreement cannot be reconciled and the intention of the parties cannot be ascertained. As noted, the trial court's findings of fact and conclusions of law refer only to the TAA. Express findings made by a trial judge cannot be extended by implication to cover further independent issuable facts. Tex.R. Civ. P. 299; *F.R. Hernandez Const. & Supply Co., Inc. v. Nat. Bank of Commerce*, 578 S.W.2d 675, 679 (Tex.1979) (citing *Duncan v. Willis*, 157 Tex. 316, 302 S.W.2d 627 (1957); *McKenzie v. Carte*, 385 S.W.2d 520 (Tex.Civ.App. Corpus Christi 1964, writ ref'd n.r.e)). Moreover, even if the right, if any, to invoke the FAA had not been waived, Henry would still be required to show that the underlying transaction (the attorney/client contract) involves interstate commerce.[6] *See Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992) (citing 9 U.S.C. § 2). There is no evidence demonstrating that the attorney/client agreement between Godt and Henry relates to interstate commerce. Accordingly, we conclude the trial court's order compelling arbitration may be upheld, if at all, based only on Texas law and not the FAA. *See* Tex.R. Civ. P. 299 (when trial court files findings of fact and conclusions of law, those findings limit issues reviewable on appeal and trial court's judgment cannot be supported based on presumed findings not encompassed by express findings).

In support of his assertion that "no review of any type (including mandamus) [is available] from an interlocutory order compelling arbitration under the TAA," Henry cites this Court's opinion in *In re Van Blarcum*, 19 S.W.3d 484 (Tex.App.—Corpus Christi 2000, orig. proceeding). Henry's reliance on *Van Blarcum* is misplaced. In *Van Blarcum*, we noted the distinction between the appealability of an interlocutory order *denying* a motion to compel arbitration under the TAA (which may be appealed) and an order *granting* a motion to compel arbitration under the TAA (which is *not* appealable). *See In re Van Blarcum*, 19 S.W.3d at 488–89 n. 7. Section 171.098 of the TAA provides:

(a) A party may appeal a judgment or decree entered under this chapter or an order:

(1) *denying* an application to compel arbitration made under Section 171.021;

(2) *granting* an application to *stay* arbitration made under Section 171.023;

(3) confirming or denying confirmation of an award;

(4) modifying or correcting an award; or

(5) vacating an award without directing a rehearing.

Tex. Civ. Prac. & Rem.Code Ann. § 171.098(a) (Vernon Supp.2000) (emphasis supplied).

---

**6.** The FAA "applies to all suits in state or federal court when the dispute concerns 'a contract evidencing a transaction involving commerce.'" *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992) (citing 9 U.S.C. § 2); *see also, Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (interpreting FAA as requiring "that the 'transaction' in fact 'involv[e]' interstate commerce"); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (party seeking to compel arbitration under FAA must present sufficient evidence to establish its right to arbitrate under FAA); *Phillips Petroleum Co. v. Marathon Oil Co.*, 794 F.2d 1080, 1082 (5th Cir.1986) (per curiam) (holding that explicit findings regarding interstate commerce are not required for application of the FAA on appeal, because the district court specifically found that "federal law governed the arbitrability of the dispute. Inherent in such a finding is that the contract [involved] interstate commerce"); *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 551 F.2d 1026, 1040 n. 36 (5th Cir.1977) (applying the FAA even though the trial court made no "explicit finding" concerning interstate commerce, because the contract at issue "obviously is a transaction involving commerce"), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). In the present case, the underlying transaction dispute does not in any way relate to interstate commerce and we conclude the FAA is inapplicable.

Accordingly, we held in *Van Blarcum* that under the TAA, a party cannot *appeal* an order *compelling* arbitration. *See In re Van Blarcum*, 19 S.W.3d at 488–89 n. 7 (emphasis added) (citing TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a) (Vernon Supp. 2000); *Lipshy Motorcars, Inc. v. Sovereign Assocs.*, 944 S.W.2d 68, 69–70 (Tex. App.—Dallas 1997, no writ); *Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing*, 940 S.W.2d 150, 154 (Tex.App.— San Antonio 1996, no writ; *Gathe v. Cigna Healthplan of Tex., Inc.*, 879 S.W.2d 360, 362 (Tex.App.—Houston [14th Dist.] 1994, writ denied)); *see also In re MHI Partnership, Ltd. d/b/a Pioneer Homes & McGuyer Homebuilders, Inc.*, 7 S.W.3d 918, 920–21 (Tex.App.—Houston [1st Dist] 1999 (orig.proceeding) (mandamus proper where trial court abused its discretion in deferring ruling on motion to compel arbitration until after discovery completed). We did *not* hold, as Henry asserts, that "no review of any type (including mandamus)" is available from an order compelling arbitration. We specifically noted in *Van Blarcum* that it was unnecessary for us to decide whether mandamus relief was available under the TAA because the arbitration agreement in that case was governed by the FAA. *See In re Van Blarcum*, 19 S.W.3d at 489.

■ Mandamus will issue to correct a clear abuse of discretion or violation of duty imposed by law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). A clear abuse of discretion occurs when the court's decision on a factual issue is so arbitrary and capricious as to amount to clear error or is a violation of legal duty. A clear abuse of discretion also exists with any error in analyzing or applying the law. *Id.* A party who is compelled to arbitrate without having agreed to do so will have lost its right to have the dispute resolved by litigation and has no adequate remedy by appeal. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994). Absent a valid agreement between the parties to arbitrate the claims at issue, there is no obligation to arbitrate. *Id.*

■ A reviewing court [in a mandamus proceeding] may not disturb the trial court's resolution of factual issues, even if the reviewing court would have decided differently, unless the resolution is shown to be arbitrary and unreasonable. *Walker*, 827 S.W.2d at 839–40. A trial court's resolution of a factual issue is arbitrary and unreasonable if the relator establishes that the trial court could reasonably have reached only one decision. *Id.* at 840. However, "[a] trial court has no 'discretion' in determining what the law is or applying the law to facts." *Id.* Failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

■ Although Godt's challenge to the agreement relied on the inapplicability of the TAA and public policy grounds, we note that the agreement is indisputably a contingent fee agreement for legal services. Section 82.065(a) of the government code provides, "[a] contingent fee contract for legal services must be in writing and *signed by the attorney* and client." TEX. GOV'T CODE ANN. § 82.065(a) (emphasis added). It is undisputed that the agreement was signed only by Godt; neither Henry nor anyone from his office signed the agreement. We hold, therefore, that Henry may not enforce the arbitration agreement because it fails to comply with the requirements set forth in the government code. We do not address the issue of whether Godt may enforce the agreement.

■ Even if the agreement met the requirements of section 82.065 of the government code, we nonetheless hold that the trial court abused its discretion in finding and concluding that the arbitration agreement conforms with and is enforceable under the TAA and that section 171.002(a)(3) does not apply to the agreement. Texas law classifies a legal malpractice claim as a personal injury action. *See Sample v. Freeman*, 873 S.W.2d 470, 476 (Tex.App.—Beaumont 1994, writ de-

nied); *Estate of Degley v. Vega,* 797 S.W.2d 299, 302–03 (Tex.App.—Corpus Christi 1990, no writ). The TAA does not apply to a claim for personal injury unless: (1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney. TEX. CIV. PRAC. & REM.CODE ANN. § 171.002(a)(3), (c) (Vernon Supp.2000). It is undisputed that Godt was not acting on the advice of counsel when she signed the agreement and that the agreement is not signed by an attorney representing either party. We hold that a claim for legal malpractice is a claim for personal injury within the meaning of section 171.002(a). We further hold the arbitration agreement is unenforceable under the TAA.

 Henry argues that the holding in *Sample* that a legal malpractice claim is classified as a personal injury claim is *dicta* because it is limited to the context of allowing a plaintiff to recover prejudgment interest. Similarly, he argues that this Court's holding in *Vega* is limited to the context of characterizing a legal malpractice claim as a personal injury solely for limitations purposes. We are unpersuaded that the language in *Sample* and *Vega* characterizing a legal malpractice claim as a personal injury action is limited to the facts in those cases. A legal malpractice claim is in the nature of a tort. *See Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1988). Moreover, the nature of Godt's complained-of injury in her malpractice claim is an action for personal injury, rather than an action for economic or contractual losses. In *Sample,* the plaintiff was injured in an accident aboard a ship, and the act of malpractice was the attorney's failure to timely file a personal injury suit. The damages were those resulting from the shipboard injury that the plaintiff would have recovered but for the attor-

ney's negligence. Like the claim in the instant suit, the character of the injury was physical in nature.

Henry also cites *Porter & Clements v. Stone,* 935 S.W.2d 217, 220–22 (Tex.App.—Houston [1 st Dist.] 1996, no writ), in support of his position that arbitration agreements in attorney-client contracts have been upheld by Texas courts. In *Porter,* the Houston Court of Appeals held that an arbitration agreement in a fee agreement applied to legal malpractice and misrepresentation claims, even though the only examples of covered disputes expressly stated within the agreement were fee-related. *Id.* at 220. In *Porter,* however, the parties did not dispute either the existence of the arbitration agreement or that it encompassed the claims at issue. *Id.* The only issue before the court—and the only issue addressed by the court—was whether the arbitration was binding. The issue of whether a legal malpractice claim is a personal injury action within the meaning of section 171.002(a)(3) was not addressed by the court.

Similarly, in *Gonzalez,* 18 S.W.3d at 690, the San Antonio Court of Appeals focused on whether the attorneys' termination of the attorney-client contract also terminated application of the mandatory arbitration clause. *See id.* The court held that an arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole. *Id.* The San Antonio Court did not address whether a legal malpractice claim is a personal injury action excluded from the scope of the TAA by section 171.002(a)(3).

Because we conclude the arbitration agreement is unenforceable because the agreement falls within the personal injury exception, we need not address Godt's arguments that the agreement is unenforceable on public policy grounds.[7]

---

7. We note, however, that rule 1.08(g) of the Texas Disciplinary Rules of Professional Conduct provides, in relevant part:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by

We hold the trial court clearly abused its discretion in granting Henry's motion to compel arbitration because the agreement is unenforceable under the TAA. Accordingly, we conditionally grant a writ of mandamus. We hereby order the trial court to enter an order vacating its order of May 4, 2000 compelling arbitration in this case and to enter an order denying the motion to compel arbitration. If the trial judge enters an order in compliance with this order, the writ will not issue.

law *and the client is independently represented in making the agreement, . . .*

TEX.R. PROF. COND. 1.08(g), *reprinted in* TEX GOV'T.CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (emphasis added).