Motion for Rehearing Overruled, Appeal Dismissed,
Petition for Writ of Mandamus Conditionally Granted, Opinions of March 4, 2010
Withdrawn and Substitute Majority and Dissenting Opinions filed May 27, 2010.



 

 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          




NO. 14-09-00387-CV



 

                           
                        IN
RE STEVEN TUAN PHAM



Original Proceeding 

Writ of Mandamus



 

                                                                                         




NO. 14-08-01153-CV



 

STEVEN TUAN PHAM, SMITH & GARG, L.L.C., AND SARITA
GARG., Appellants

V.

SHELLY LETNEY, Appellee

 



On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2008-43381



 

S U B S T
I T U T E   M A J O R I T Y   O P I N I O N

 

We
overrule Shelly Letney’s Motion for Rehearing,
withdraw our prior opinion issued on March 4, 2010, and substitute this opinion
in its place.

In this
matter, we have consolidated a petition for writ of mandamus with an
interlocutory appeal raising the same issues in the same case.  In these
proceedings, appellant/relator Steven Tuan Pham
challenges the trial court=s denial of a motion to compel arbitration with appellee/real-party-in-interest Shelly Letney. 
Letney sued Pham for legal malpractice, and Pham
moved to compel arbitration based on an arbitration clause in a legal services
contract.  Pham now attacks the trial court=s holding that the arbitration clause
was invalid or unenforceable because either (1) the lawsuit sought recovery for
personal injuries and thus was exempted from arbitration; (2) the Federal
Arbitration Act (AFAA@), identified in the agreement as governing any arbitration thereunder, was inapplicable to the facts of this case; (3)
the arbitration agreement was unconscionable; or (4) the arbitration agreement
was voidable as being against the Disciplinary Rules of Professional
Conduct.  Appellants Smith & Garg, L.L.C.
and Sarita Garg filed a
notice of appeal but then moved to have their appeal dismissed, a motion which
we granted, and did not join the petition for writ of mandamus.  We
dismiss the interlocutory appeal and conditionally grant the writ of mandamus.

I. 
Background

Shelly Letney allegedly suffered personal injuries in an
automobile accident.  She hired the law firm of Smith & Garg, L.L.C. to pursue her claims against the other driver
involved in the collision.  Sarita Garg is a named partner in the firm.  Steven Pham, an
associate with the firm, was at least partially responsible for handling Letney’s case.  The attorney-client agreement between Letney and Smith & Garg
contained the following arbitration provision:

ARBITRATION

Any and all
disputes, controversies, claims or demands arising out of or relating to this
Agreement or any provision hereof, whether in contract, tort or otherwise, at
law or in equity, for damages or any other relief, shall be resolved by binding
arbitration pursuant to the Federal Arbitration Act in accordance with the
Commercial Arbitration Rules then in effect with the American Arbitration
Association.  Any such arbitration proceeding shall be conducted in Harris
County, Texas pursuant to the substantive federal laws established by the
Federal Arbitration Act.  Any party to any ward [sic] rendered in such
arbitration proceeding may seek a judgment upon the award and that judgment may
be entered by any federal or state court in Montgomery County, Texas [sic]
having jurisdiction.

In the
present action, Letney alleges legal malpractice and
other claims against Pham, Garg, and Smith & Garg, L.L.C., based on a failure to timely file suit for Letney=s alleged personal injuries.  The defendants filed a
motion to compel arbitration and an amended motion based on the arbitration
provision in the contract.  Letney filed a
response and a supplemental response contending that (1) her claims are exempt
from arbitration because she seeks recovery for personal injuries, (2) the FAA
is inapplicable because the contract at issue did not affect interstate
commerce, (3) the arbitration clause is unconscionable, and (4) the arbitration
clause violates the Disciplinary Rules of Professional Conduct.

Attached
to her response, Letney also filed an affidavit in
which she averred, in addition to other things relating to the underlying
matter, as follows:

In making my decision to hire Defendants, I relied on various
representations regarding the firm=s
diligence, experience, and expertise as listed on the firm=s website. [&] 
At all times prior to and during my representation, Defendants held themselves
out to be expert lawyers in the field of personal injury and promised to file suit
. . . so that I would receive the maximum allowable damages . . . .  When
I signed the Contract I was not represented by an attorney.  I did not
have an attorney to advise me regarding the legal aspects of all terms and
conditions in the Contract.  No one from Smith & Garg
advised me or told me about the arbitration clause in the Contract or what it
meant.  I have no legal training and do not know what arbitration is or
what it means to arbitrate.  No one from Smith & Garg
advised me or told me that by signing the Contract I could be waiving my
constitutional rights to a jury trial.

No one from Smith & Garg went over [the
Contract] with me[,] informed me about the pros, cons,
advantages or disadvantages, effects and ramifications of the arbitration clause[,
or] informed me about my rights and duties under the arbitration clause. 
I did not obtain advice from outside counsel, or any counsel regarding the
arbitration clause prior to signing [the Contract] and no one from Smith & Garg ever advised me to obtain legal advice from outside
counsel regarding the arbitration clause.

I trusted Defendants to advise me on all matters regarding Defendants= representation of me.  Defendants never advised
me in any manner whatsoever regarding the arbitration clause.  I was
unaware that [the Contract] even contained an arbitration clause.  Lastly,
I did not intend to agree to an arbitration clause.

The trial court denied the motion to
compel without stating the basis for the holding.

All of
the defendants/appellants filed a joint notice of appeal in the trial court;
however, after the case was assigned to this court, appellants Smith & Garg, L.L.C. and Sarita Garg moved to have their appeals dismissed.  We
granted that motion.  These same parties also did not join the petition
for writ of mandamus filed by Pham; thus, Smith & Garg
and Sarita Garg are no
longer parties to the proceedings in this court.

II.  Mandamus or Appeal?

 

We begin
by determining whether the issues brought in these proceedings are properly raised
in a direct interlocutory appeal or in a petition for writ of mandamus. 
It is well-settled that when a trial court denies arbitration under the Texas
Arbitration Act (“TAA”), the order is subject to interlocutory appeal, whereas
when a court denies arbitration under the FAA, relief must be sought in a
petition for writ of mandamus.  See, e.g., Wachovia Securities,
L.L.C. v. Emery, 186 S.W.3d 107, 111-12 (Tex. App.—Houston [1st Dist.]
2005, orig. proceeding) (citing Tex. Civ. Prac. &
Rem. Code § 171.098(a)(1) and EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996), et al). 
Although the motion to compel was somewhat ambiguous in the present case, the
only basis for arbitration cited—the arbitration provision in the
contract—explicitly designated arbitration pursuant to the FAA. 
Consequently, we interpret the motion to compel as seeking only arbitration
under the FAA; thus, mandamus, and not interlocutory appeal, was the correct
procedural vehicle for the relief Pham seeks.  See In re Olshan Found. Repair Co., 277 S.W.3d 124, 130-132 (Tex.
App.—Dallas 2009, orig. proceeding) (emphasizing parties’ right to specify the
rules pursuant to which arbitration shall occur); In re Kellogg Brown &
Root, 80 S.W.3d 611, 617 (Tex. App.CHouston [1st Dist.]
2002, orig. proceeding) (same).  Accordingly, we dismiss Pham’s
interlocutory appeal and consider the merits of his petition for writ of
mandamus.  See Wachovia Securities, 186
S.W.3d at 112.

III.  Standards of Review

 

A party
seeking to compel arbitration must establish the existence of an arbitration
agreement and show that the claims raised in the
particular lawsuit fall within the scope of that agreement.  In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig.
proceeding).  If one of the parties denies that there is a binding
arbitration agreement, the trial court may decide whether to compel arbitration
on the basis of uncontroverted affidavits, pleadings, discovery, and
stipulations.  Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992) (orig.
proceeding).  We utilize an abuse of discretion standard in assessing
whether a party is entitled to mandamus relief for a trial court’s refusal to
compel arbitration; however, we consider the trial court’s legal
determinations—such as whether an arbitration agreement is legally
enforceable—de novo.  In re Labatt Food Serv., L.P., 279 S.W.3d
640, 643 (Tex. 2009) (orig, proceeding).  If an
existing agreement to arbitrate encompasses the claims in question, and the
party opposing arbitration fails to prove any defense to enforcement, the trial
court has no discretion: it must compel arbitration.  In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753‑54
(Tex. 2001) (orig, proceeding).  On mandamus
review of factual issues, a trial court can be held to have abused its
discretion only if the party requesting mandamus relief establishes that the
trial court reasonably could have reached only one decision, a decision other
than that actually reached by the court.  Walker v. Packer, 827
S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).  A trial court abuses its
discretion if it clearly fails to analyze the law correctly or correctly apply
the law to the facts.  In re Cerberus Capital Mgmt., L.P., 164
S.W.3d 379, 382 (Tex. 2005) (orig. proceeding).

IV.  Relator’s Arguments

           
In her affidavit attached to her responses to the motion to compel, Letney acknowledged that she signed the attorney-client
representation agreement containing an arbitration provision.  Further,
she does not contest that the allegations in the present case are within the
scope of that provision.  In her responses to the motion, however, she
raised several defenses against enforcement of the provision.  The trial
court denied the motion to compel, apparently determining that the provision
was invalid or otherwise unenforceable based upon one or more of the grounds
contained in Letney’s responses.  In the
petition for writ of mandamus, Pham challenges the trial court=s implied holding that the
arbitration agreement was invalid or unenforceable on the basis that (1) Letney’s claims were for personal injuries and thus
exempted from arbitration, (2) the FAA was inapplicable to the case, (3) the
arbitration clause was unconscionable, or (4) the arbitration clause was
voidable as being against the Rules of Professional Conduct.  If any one
of these grounds supports the denial of arbitration, we must deny
mandamus.  We will consider each issue in turn.

A. 
Personal Injury Exemption

 

Letney’s primary argument in response to the motion to compel was
based on TAA section 171.002, which prohibits arbitration agreements in respect
to claims for personal injuries unless each party to the agreement receives
advice of counsel and the agreement is in writing and signed by each party and
each party’s attorney.  Tex. Civ. Prac.
& Rem. Code § 171.002(a)(3), (c).  Letney
established that she was not represented by counsel when she signed the
contract and, consequently, no attorney representing her signed the
contract.  On that basis, Letney contends that
if her claims are deemed to be personal injury claims, then arbitration cannot
be compelled under section 171.002.  Even assuming that the TAA section in
question can apply to an arbitration agreement
selecting FAA procedures,[1]
it would not apply in the circumstances presented by this case because Letney has alleged legal malpractice in this lawsuit and
not personal injury.

There is
a split of authority among the Texas courts of appeals regarding whether legal
malpractice claims constitute personal injury claims for purposes of section
171.002.  Several courts, including this one, have held, as we do here,
that legal malpractice claims do not constitute personal injury claims for
purposes of section 171.002.  See Chambers v. O’Quinn, No.
01-04-0129-CV, 2009 WL 3152968, at * 7 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet. h.); Taylor v. Wilson, 180
S.W.3d 627, 630-31 (Tex. App.CHouston
[14th Dist.] 2005, pet. denied); Miller v. Brewer, 118 S.W.3d 896, 899
(Tex. App.CAmarillo
2003, no pet.); In re Hartigan, 107 S.W.3d
684, 690-91 (Tex. App.CSan
Antonio 2003, pet. denied).  Only one court, the Corpus Christi Court, has
held to the contrary.  In re Godt,
28 S.W.3d 732, 738-39 (Tex. App.CCorpus Christi 2000, no pet.). 
As we explained in Taylor, the In re Godt
court incorrectly interpreted a Texas Supreme Court case, Willis v. Maverick,
760 S.W.2d 642 (Tex. 1988).  Taylor, 180 S.W.3d
at 630.  In Willis, the supreme court
held that a legal malpractice claim was in the nature of a tort for limitations
purposes.  760 S.W.2d at 644.  The In re Godt court incorrectly deduced from this holding, as
well as from other erroneous courts of appeals’ interpretations of Willis,
that legal malpractice is a personal injury claim.  Taylor, 180 S.W.3d at 630.  We again decline to follow In re
Godt, and instead follow our own precedent set
forth in Taylor.

Letney attempts to distinguish Taylor, as well as Miller and In
re Hartigan, by pointing out that the underlying
matter in the present case was for personal injuries, i.e., injuries she
sustained in an automobile accident, whereas the underlying matters in the
other cited cases were not for personal injuries.  Indeed, in Taylor,
we pointed out that In re Godt was factually
distinguishable because it (In re Godt)
involved an underlying claim of personal injury (specifically medical
malpractice), and the underlying claim in Taylor was not for personal
injury.  Taylor, 180 S.W.3d at 630. 
The Amarillo court distinguished In re Godt in
the same manner in Miller.  Miller, 118
S.W.3d at 899.  However, we agree with the First Court of Appeals’
recent analysis in Chambers v. O’Quinn, wherein it explained that a
legal malpractice cause of action is one for economic loss and not personal
injury caused by the defendant, and the fact that the case on which the
malpractice action was based was one for personal injury does not transform the
malpractice action into an action alleging personal injury.  2009 WL 3152968, at *7.  Because Letney’s
claim in the present case is for legal malpractice and not personal injury, we
find no merit in her argument based on application of TAA section
171.002.  The trial court erred if it refused to compel arbitration on the
basis of section 171.002.

B. 
FAA Applicability




Letney further argued in her responses that arbitration pursuant to the FAA
would be improper, despite the selection of FAA arbitration in the arbitration
clause, because the contract in question, for legal services in Texas
concerning a Texas-based claim, had no impact on interstate commerce. 
However, this court, along with a number of other Texas courts of appeals, have
already rejected this argument, holding that when parties agree to arbitrate
under the FAA, that agreement will control the arbitration irrespective of
whether interstate commerce is involved in or impacted by the agreement.  See,
e.g., In re Chestnut, 300 S.W.3d 386, 398 (Tex. App.—Dallas 2009, orig.
proceeding); In re Ready One Indus., Inc., 294 S.W.3d 764, 769 (Tex.
App.—El Paso 2009, orig. proceeding); Ernst & Young L.L.P. v. Martin,
278 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2009, no pet. h.); In re
Jim Walter Homes, Inc., 207 S.W.3d 888, 896 (Tex. App.—Houston [14th Dist.]
2006, orig. proceeding); In re Kellogg Brown & Root, 80 S.W.3d 611,
617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding).  We are bound
by our prior precedent, as is the trial court.  See Nabelek
v. Bradford, 228 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2006, writ
denied).  Here, the arbitration provision in question clearly specified
arbitration under the FAA; accordingly, the trial court erred if it denied the
motion to compel because the transaction in question had no impact on
interstate commerce.

C.  Unconscionability

Letney additionally argued in her response that the arbitration provision was
unconscionable and therefore invalid.  In her argument to the trial court,
Letney relied heavily on Chief Justice Hardberger’s dissent in Henry v. Gonzalez, 18 S.W.3d
684 (Tex. App.—San Antonio 2000, pet. dism’d by agr.).  In Henry, Justice Hardberger
maintained that “special public policy considerations are implicated when an
attorney imposes an arbitration provision on his or her client.”  18 S.W.3d at 692 (Hardberger, C.J.,
dissenting).  He further detailed the advantages an attorney
typically holds over a prospective client during contract negotiations,
including a greater base of knowledge and greater bargaining power.  Id. at 693.  He then argued that arbitration
clauses between attorney and client should be held against public policy in the
absence of additional protections for the client.  Id.
at 693-94.  While we are not unsympathetic to Justice Hardberger’s concerns, or the concerns expressed by Justice
Seymore in his dissent in the present case, we believe that such policy
arguments are better directed to the legislature.  Indeed, the legislature
has already considered limitations on arbitration agreements in certain
contexts, as demonstrated by section 171.002 of the Texas Civil Practice and
Remedies Code, and has yet to see fit to include attorney-client contracts
among those requiring restrictions.  Moreover, this court has already
addressed and rejected the notion that arbitration provisions in attorney-client
contracts are inherently unconscionable without additional restrictions.  See
Labidi v. Sydow, 287
S.W.3d 922, 927-28 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding).

In her
briefing to this court, Letney greatly expanded her unconscionability  argument.  She premised her additional
contentions on the notion that a fiduciary relationship can develop between an
attorney and a prospective client prior to their entering into a formal
contract for legal services, citing Restatement (Second) of Agency § 390 cmt. e (1958) (“[i]f . . . in the
case of attorney and client, the creation of the relation involves peculiar
trust and confidence, with reliance by the principal upon fair dealing by the
agent, it may be found that a fiduciary relation exists prior to the employment
and, if so, the agent is under a duty to deal fairly with the principal in
arranging the terms of the employment.”), et al.[2]  Letney
contends that on such basis, it may be incumbent upon the attorney to ensure
that the prospective client is fully informed and advised regarding the nature
and implications of any arbitration clause contained in the formal contract.

The
problem for Letney, however, is not that it is
impossible for a special, fiduciary, or attorney-client relationship to arise
prior to entering a formal agreement but that she has not brought forth
evidence that such occurred here.  See In re FirstMerit
Bank, N.A., 52 S.W.3d 749, 756 (Tex. 2001) (orig. proceeding) (“[T]he
burden of proving a defense to arbitration is on the party opposing
arbitration.”).  The only evidence Letney
attached to her response was a copy of the contract and her own
affidavit.  In her affidavit, Letney stated that
in making her decision to hire appellants she relied on various representations
made on the firm’s website regarding the firm’s qualities.  She
acknowledged that no one from Smith & Garg
advised her or told her about the arbitration clause or its implications. 
She said that she “did not obtain advice from outside counsel, or any counsel
regarding the arbitration clause prior to signing” the contract.  Although
Letney states generally that appellants “held
themselves out to be expert lawyers in the field of personal injury” and that
she trusted them to advise her on all matters regarding their representation of
her, she does not identify any negotiations, discussions, or counseling that
occurred prior to her signing of the contract that could have given rise to a
special relationship between the parties.  Indeed, Letney’s
affidavit establishes nothing more than that she read statements on the firm’s
website and then signed the contract.  The reading of statements on a
website is not by itself evidence of the development of a special
relationship.  See Barron Partners, L.P. v. LAB123, Inc., 593 F.
Supp. 2d 667, 671 (S.D.N.Y. 2009).  Letney’s
statements that she relied on and trusted the defendants are conclusory in nature and likewise do not, by themselves, constitute evidence that a special relationship
had developed.  Crim Truck &
Tractor Co. v. Navistar Int’l Transp. Corp., 823 S.W.2d 591, 595 (Tex.
1992) (“[M]ere subjective trust alone is not enough to transform arms-length
dealing into a fiduciary relationship.”).  In short, Letney
failed to carry her burden of proving her defense of unconscionability.

Lastly, Letney cites to an opinion rendered by the Texas Ethics
Commission in which the Commission suggested that it would be permissible under
the Texas Disciplinary Rules of Professional Conduct to include an arbitration
clause in an attorney-client contract only if the client was made aware of the
advantages and disadvantages of arbitration and had sufficient information to
make an informed decision as to whether to include the clause.  See
Op. Tex. Ethics Comm’n No. 586 (2008).  Letney contends that this opinion supports the notion that
for an arbitration clause in an attorney-client contract to be considered
valid, an attorney must make sure that the client is fully informed regarding
the clause’s implications.  However, in Labidi,
we considered a substantially similar argument based on the exact same ethics
opinion.  287 S.W.3d at 929.  We concluded
in Labidi that Opinion No. 586 did not impose
any restrictions on attorney-client arbitration clauses because (1) such
opinions are advisory at best, (2) the commission expressly declined in the
opinion to opine on the substantive law concerning arbitration clause
enforceability, and (3) substantive law does not include any such
restrictions.  Id.  Following Labidi,
we decline to impose a requirement that attorneys must in all cases fully
inform prospective clients regarding the implications of an arbitration clause
in an attorney-client contract.  This argument is best preserved for the
legislature.

For the
foregoing reasons, the trial court erred if it refused to compel arbitration
based on unconscionability of the arbitration
agreement.

D. 
Disciplinary Rules

Letney’s final argument in response to the motion to compel was based
on Texas Disciplinary Rule of Professional Conduct 1.08(g), which provides that
“[a] lawyer shall not make an agreement prospectively limiting the lawyer’s
liability to a client for malpractice unless permitted by law and the client is
independently represented in making the agreement . . . .”  Tex. R. Prof.
Cond. 1.08(g), reprinted in Tex. Gov’t Code Ann. Tit. 2, subtit. G app. A (Vernon 1998). 
Citing this rule, Letney asserted that the
arbitration provision at issue in this case improperly limited Pham’s potential
liability to her as a client.  However, an agreement to arbitrate does
not, in fact, limit a party’s liability; it merely denominates a procedure for
determining that liability.  See, e.g., Chambers,
2009 WL 3152968, at *7; In re Hartigan, 107
S.W.3d at 689.  Accordingly, Letney’s
argument based on section 1.08(g) is without merit, and the trial court erred
if it denied arbitration on that basis.

V. 
Conclusion

           
None of the arguments Letney made in response to the
motion to compel arbitration have merit, and there is no other basis for
affirming the trial court’s order denying the motion.  Consequently, we
hold that the trial court abused its discretion in denying the motion.  We
therefore dismiss the interlocutory appeal and conditionally grant the writ of
mandamus.

                                                                                   


/s/       
Adele Hedges

Chief Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Sullivan. (Seymore, J.
dissenting).

 

 














[1]
Because the parties did not raise and do not brief the question of
whether section 171.002 can apply to an arbitration agreement that selects the
FAA, we will instead address the issue raised and briefed.





[2]
Letney also cites Restatement (Third) of Agency
§ 15 cmt. b (2000) for the
proposition that mere consultation between an attorney and a prospective client
creates a fiduciary relationship.  However, neither this section of the
Restatement nor the referenced comment either states or directly supports the proposition
for which they are cited.